IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

EDGAR REYES-COLÓN,

    **Plaintiff,**

        v.

BANCO POPULAR DE PUERTO RICO, *et al.*,

    **Defendants.**

CIVIL NO. 20-1355 (JAG)

## OPINION AND ORDER

GARCIA-GREGORY, D.J.

Pending before the Court is Defendant Banco Popular de Puerto Rico's ("BPPR")[1] Motion to Dismiss,[2] Docket No. 109; Plaintiff Edgar Reyes-Colón's ("Reyes-Colón") Response, Docket No. 115; and BPPR's Reply, Docket No. 118. For the reasons stated below, the Court **DENIES** BPPR's Motion to Dismiss.

## ANALYSIS

BPPR claims the Court should dismiss Reyes-Colón's 11 U.S.C. § 303(i)(2) claims under Fed. R. Civ. P. 12(b)(6) because (1) "under the *res judicata* or claim preclusion doctrines, Reyes-Colón is forestalled from proceeding with his bad faith damages claim," (2) "Reyes-Colón waived

---

[1] Popular Auto LLC was also a named Defendant but "Popular Auto LLC is no longer in existence and is currently a division of Banco Popular de Puerto Rico." Docket No. 109 at 1 n.1.

[2] After granting Plaintiff's Motion to Withdraw Reference, the Court ordered BPPR to Answer the Complaint. Docket No. 108. BPPR failed to comply and, instead, filed a Motion to Dismiss. Docket No. 109. Although Defendant's arguments have been previously considered by this Court, for the sake of absolute clarity, efficiency, and judicial economy, the Court will entertain Defendant's motion. The Court, however, will not entertain any other motion on the merits.

CIVIL NO. 20-1355 (JAG)                                                                                    2

his right to seek redress under section 303(i)(2)," and (3) "the complaint is untimely as [Reyes-Colón] filed the complaint on June 18, 2020, and the involuntary bankruptcy case was dismissed on September 2, 2016." Docket No. 109 at 3. Even though most, if not all, of BPPR's arguments have been previously considered and rejected by this Court and the First Circuit, the Court will address each in turn.

BPPR repeats arguments made before the First Circuit and this Court, stating that in those instances these issues were "not the central inquiry, nor ripe for full adjudication." Docket No. 109 at 3 n.4. Per BPPR, "Reyes-Colón's Motion for Withdrawal of the Reference focused exclusively on determining the appropriate forum for the claims, rather than assessing the claims' ultimate viability against a statute of limitations or a reasonable time defense for dismissal." *Id.* However, Section 157(d) allows a district court to withdraw reference *for cause shown.* 28 U.S.C. § 157(d); *see Reyes-Colón v. Banco Popular de P.R.*, 110 F.4th 54, 69 (1st Cir. 2024). To determine if cause was shown, the Court conducted a plausibility analysis because no cause would exist if the claims in the motion to withdraw were futile. Docket No. 108 at 9-14; *cf. In re Sattler's, Inc.*, 73 B.R. 780, 784-85 (Bankr. S.D.N.Y. 1987) ("Notwithstanding that any motion to withdraw the reference should be presented to the district court, we are empowered to determine the sufficiency of the pleadings and, indeed, should do so, so as to avoid swamping the district court with motions to withdraw the reference pegged to allegations in deficient pleadings."); *Reid v. New Hampshire*, 56 F.3d 332, 342 (1st Cir. 1995) ("Where an amendment would be futile or would serve no legitimate purpose, the district court should not needlessly prolong matters.") (cleaned up). Therefore, the Court could and should have assessed the viability of the claims when determining if there was cause to withdraw the reference.

CIVIL NO. 20-1355 (JAG)                                                                 3

Before delving into the issue at hand, the Court underscores the purpose of an involuntary

bankruptcy and the importance of maintaining the integrity of the bankruptcy system:

> Involuntary bankruptcy petitions help ensure the orderly and fair distribution of an estate by giving creditors an alternative to watching nervously as assets are depleted, either by the debtor or by rival creditors who beat them to the courthouse. Despite these benefits, involuntary bankruptcy petitions have serious consequences [for] the alleged debtor, such as loss of credit standing, inability to transfer assets and carry on business affairs, and public embarrassment. By giving creditors the ability to bring a debtor into bankruptcy, Congress created a power that could be abused. Such a remedy exists as an avenue of relief for the benefit of the overall creditor body . . . [It] was not intended to redress the special grievances, no matter how legitimate, of particular creditors . . . [Such creditors] must seek redress under state law, in the state courts[,] and not in the bankruptcy court. In part because of the unusual nature of involuntary petitions, Congress provided bankruptcy courts with a variety of tools with which to police their use.

*Wilk Auslander LLP v. Murray (In re Murray)*, 900 F.3d 53, 59-60 (2nd Cir. 2018) (cleaned up).

Moreover,

> [B]ankruptcy court[s] appropriately recognize[] the interest of the bankruptcy system, and thus the public interest, in preventing parties from exploiting the bankruptcy system for non-bankruptcy-related reasons, especially when adequate remedies exist in state courts. Were we to ignore those interests, we would likely see an increase of new bankruptcy filings in cases that are more appropriately handled in state court. This increase would divert the valuable resources and attention of specialized bankruptcy courts to matters intended to be addressed in state court—a result that is antithetical to the purpose of having a separate bankruptcy system in the first place.

*Id.* at 63 (citations omitted). The Court now turns to the arguments put forth by BPPR.

I.   *Res Judicata*

BPPR argues that Reyes-Colón "is precluded from relitigating whether Banco Popular filed

the involuntary bankruptcy petition in bad faith, since there is already a final and unappealable

CIVIL NO. 20-1355 (JAG)                                                          4

decision concluding otherwise." Docket No. 109 at 6-7. Per BPPR, the Bankruptcy Court's decision "has extensive and detailed factual findings of Reyes-Colón's scheme to defraud Banco Popular and which findings led the bankruptcy court to conclude the involuntary bankruptcy petition was not improperly filed." *Id.* The Court disagrees.

> The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.' Under the doctrine of claim preclusion, a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit. Issue preclusion, in contrast, bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim.

*Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (cleaned up). For *res judicata* to apply, "there must be (1) a final judgment on the merits in an earlier suit, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two suits." *In re Iannochino*, 242 F.3d 36, 43 (1st Cir. 2001) (citation omitted).

Here, *res judicata* does not apply. BPPR overlooks the fact that the Bankruptcy Court went beyond its statutory authority when it conducted evidentiary hearings to determine if special circumstances could apply to bypass the requirements in 11 U.S.C. § 303(b).[3] *In re Colón*, 558 B.R. 563, 564-65 (Bankr. D.P.R. 2016); *see also Law v. Siegel*, 571 U.S. 415 (2014). And, ultimately, the Bankruptcy Court's Opinion and Order determined the involuntary petition had to be dismissed

---

[3] On May 23, 2012, the Bankruptcy Court found that the involuntary debtor "had 15 creditors and that there are only two petitioning creditors" but "that the judicially created special circumstances exception to the numerosity requirement in § 303(b) may apply if the petitioning creditors establish fraud, artifice or scam." *In re Colón*, 558 B.R. at 564-65. On January 13, 2014, the Supreme Court decided *Law v. Siegel*, 571 U.S. 415 (2014), and determined that equitable powers cannot override explicit mandates of the Bankruptcy Code.

CIVIL NO. 20-1355 (JAG)                                                              5

for failing to comply with the requisite number of creditors pursuant to § 303(b). *Id.*; *see also* 11 U.S.C. § 303(b)(1) (requiring three or more petitioning creditors). Hence, the Bankruptcy Court did not pass judgment or hear evidence on the specific issue before this court, i.e. whether BPPR filed the involuntary petition in bad faith. As stated above, *res judicata* requires sufficient identicality between the causes of action asserted in the earlier and later suits. This requirement is not met in this case.

In the Motion to Dismiss, BPPR argues that "the [bankruptcy] case proceeded to trial to rule on whether there were special circumstances, *e.g., fraud*, to grant the involuntary bankruptcy petition" but "[b]ecause of a superseding change in the law (*Law v. Siegel*, 571 U.S. 415 (2014)), the bankruptcy court was forced to bypass the special circumstances doctrine and, thus, dismissed the involuntary bankruptcy petition on September 2, 2016."[4] Docket No. 109 at 2. However, the Supreme Court decided *Law* on March 4, 2014. Therefore, *Law* was already binding when the Bankruptcy Court's evidentiary hearings took place. *Id.* ("It is hornbook law that §105(a) does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code.") (cleaned up); *see also Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988) ("[W]hatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code."). Even though *Law* foreclosed the § 303(b)

---

[4] Previously, in Bankruptcy Court, BPPR opposed Reyes-Colón's Motion to Dismiss the involuntary bankruptcy arguing *Law v. Siegel* "does not really represent a substantial change in bankruptcy law," because the "general principle recognized . . . [was] that a court cannot permit something that is *expressly prohibited* by a statute." Bankr. No. 6-4675, Docket No. 657 at 7-8. BPPR also argued that "unlike Siegel, 11 U.S.C. § 303(b) lacks specific language prohibiting the application of the special circumstances doctrine, as an exception to the three petitioning creditor requirement." *Id.*; *see also Law*, 571 U.S. at 421. Thus, BPPR previously argued *Law* was inapposite to the controversy because the special circumstances doctrine was in harmony with 11 U.S.C. § 105(a) and 11 U.S.C. § 303 (b). *Id.*

CIVIL NO. 20-1355 (JAG)                                                                6

exceptions argument, the Bankruptcy Court still conducted evidentiary hearings in November and December of 2015 to determine if the exception applied and the involuntary bankruptcy could be filed by only two creditors: BPPR and Popular Auto.[5] *See In re Colón*, 558 B.R. at 565; *see also* 11 U.S.C. § 303(b)(1) ("An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title *by three or more entities*.") (cleaned up) (emphasis added). Reyes-Colón's attorney repeatedly objected to the hearings, did not cross examine the expert witness, and stated they would not present testimony or evidence. Instead, on the day of the hearing, Reyes-Colón filed "a motion to dismiss due to the lack of [the Bankruptcy Court's] statutory power to entertain the involuntary petition under *Law v. Siegel*." *In re Colón*, 558 B.R. at 627. Eventually, on September 2, 2016, the Bankruptcy Court dismissed the involuntary bankruptcy for not complying with the requisite number of creditors. *Id.* at 568 ("A fraudulent scheme, after *Law v. Siegel*, is not a basis for a bankruptcy court to obviate the statutory requirement that there be three or more creditors joining the involuntary petition when there are twelve or more creditors."). Under *Law*, there was no basis to conduct the evidentiary hearings and the Bankruptcy Court only had jurisdiction to determine if the involuntary petition complied with the number of required creditors under § 303(b)(1). *See Norwest Bank Worthington*, 485 U.S. at 206 ("[W]hatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code."). Any finding outside of the statutory scope would have the same effect as dicta, which does not have a binding effect. *Cf. Mun. of San Juan*

---

[5] *See supra* n.1.

CIVIL NO. 20-1355 (JAG)                                                                 7

*v. Rullan*, 318 F.3d 26, 28 n.3 (1st Cir. 2003) ("Dicta comprises observations in a judicial opinion or order that are 'not essential' to the determination of the legal questions then before the court.").

BPPR cites the following portion of the Bankruptcy Court's Opinion to support its *res judicata* argument:

> The evidence before this court clearly shows that the reasons leading to the filing of the involuntary petition are the typical ones prompting creditors to take action. The Involuntary Debtor was transferring assets to related entities under his possession and control, and was engaged in a scheme to defraud his main creditor, Banco Popular de Puerto Rico.

*In re Colón*, 558 B.R. at 568. Notwithstanding, since the beginning of the involuntary petition, Reyes-Colón has claimed the involuntary petition was filed in bad faith. To determine if an involuntary petition was filed in bad faith, a court must conduct a fact-intensive review of the *creditor's* conduct and actions. No such factual review of BPPR's conduct has been conducted by any court; only a review of Reyes-Colón's actions. *See In re Forever Green Ath. Fields, Inc.*, 804 F.3d 328, 335-36 (3rd Cir. 2015); *see also Medina-Rampolla v. Banco Popular de P.R. (In re Guallini-Indij)*, 169 F.4th 64, 75 (1st Cir. 2026) ("The Guallinis seek (and have been for several years) their day in court."). A finding that an involuntary debtor transferred assets to defraud a creditor does not necessarily absolve a creditor's bad faith. *See In re Forever Green*, 804 F.3d at 334 ("[G]ood faith filing requirements have strong roots in equity. At its most fundamental level, the good faith requirement ensures that the Bankruptcy Code's careful balancing of interests is not undermined by petitioners whose aims are antithetical to the basic purposes of bankruptcy. As courts of equity, bankruptcy courts are equipped with the doctrine of good faith so that they can patrol the border between good-and-bad-faith filings. We will not depart from this general good faith filing requirement in the context of involuntary petitions for bankruptcy. The majority of courts agree.")

CIVIL NO. 20-1355 (JAG)                                                                        8

(cleaned up). Nevertheless, while the Court disagrees with BPPR that the Bankruptcy Court's

ruling precludes Reyes-Colón's claims, the Court acknowledges that the testimony given at the

hearings may give rise to one or more affirmative defenses in the answer to Reyes-Colon's

complaint.

Wilk and In re Forever Green are instructive on the matter. In Wilk, the Second Circuit

affirmed an involuntary bankruptcy dismissal for improper use of the bankruptcy system. The

Court considered the following:

> [1] [the] petition was part of a long-running, two-party dispute, [2]
> there were no other creditors to protect, [] [3] it had been brought
> solely as a judgment enforcement device for which adequate
> remedies existed in state law[, [4] the debtor] did not want or need
> a discharge[,] and [5] no other goals of bankruptcy, such as *pari passu*
> distribution among competing creditors, would be served by
> continuing the petition.

Wilk, 900 F.3d at 61 (cleaned up). The same factors are present in the instant case. The petition

was part of a previous two-party dispute between BPPR and Reyes-Colón, adequate remedies

existed in state law, Reyes-Colón did not want or need a discharge, and no other goals of

bankruptcy would be served. In fact, the Bankruptcy Court's determination that Reyes-Colón

was "transferring assets to related entities under his possession and control, and was engaged in

a scheme to defraud his main creditor, Banco Popular de Puerto Rico," *In re Colón*, 558 B.R. at 568,

shows that appropriate remedies existed in state law. Also, contrary to Wilk, the Bankruptcy

Court found that the assets were in entities still in the "possession and control" of Reyes-Colón.

*Id.* Under Article 1249 of the 1930 Puerto Rico Civil Code, BPPR had state law remedies available

CIVIL NO. 20-1355 (JAG)                                                                        9

to rescind Reyes-Colón's fraudulent transfers. *See* P.R. LAWS ANN. tit. 31, § 3498[6]; *see also Santiago v.*

*Santiago*, 731 F. Supp. 2d 202, 207 (D.P.R. 2010) ("Contracts . . . where a party alienates property

without valuable consideration are presumed to be executed in fraud of creditors. Under Puerto

Rico law this type of act is illegal and subjects a contract to rescission.") (cleaned up).

In *Forever Green*, the Third Circuit affirmed the district court's adoption of the "totality of

the circumstances" standard to determine if a creditor filed an involuntary petition in bad faith.

Here, the Court also adopts the "totality of the circumstances" standard, which

> is most suitable for evaluating the myriad ways in which creditors
> filing an involuntary petition could act in bad faith . . . In conducting
> this fact-intensive review, courts may consider a number of factors,
> including, but not limited to, whether: [1] the creditors satisfied the
> statutory criteria for filing the petition; [2] the involuntary petition
> was meritorious; [3] the creditors made a reasonable inquiry into
> the relevant facts and pertinent law before filing; [4] there was
> evidence of preferential payments to certain creditors or of
> dissipation of the debtor's assets; [5] the filing was motivated by ill
> will or a desire to harass; [6] the petitioning creditors used the filing
> to obtain a disproportionate advantage for themselves rather than
> to protect against other creditors doing the same; [7] the filing was
> used as a tactical advantage in pending actions; [8] the filing was
> used as a substitute for customary debt-collection procedures; and
> [9] the filing had suspicious timing.

*In re Forever Green*, 804 F.3d at 336 (citations omitted); *see also* Docket No. 108 at 13-14 (compiling

related caselaw).[7] Consequently, BPPR's *res judicata* argument fails because there is insufficient

---

[6] Article 1249 states: "Contracts by virtue of which the debtor alienates property, for [inadequate] consideration, are presumed to be executed in fraud of creditors. Alienations for valuable considerations, made by persons against whom a condemnatory judgment, in any [court], has been previously rendered, or a writ of seizure of property has been issued, shall also be presumed fraudulent." P.R. LAWS ANN. tit. 31, § 3498.

[7] Previously, this Court stated

> Banco Popular believes Reyes-Colon cannot claim bad faith because
> "there is a final and unappealable finding from the bankruptcy court that
> there were legitimate and well-grounded reasons to file the involuntary

**CIVIL NO.** 20-1355 (JAG)                                                                10

identicality between the causes of action asserted in Bankruptcy Court and those asserted in this

case.

BPPR's issue preclusion argument also fails. Issue preclusion requires

> (1) an identity of issues (that is, that the issue sought to be precluded is the same as that which was involved in the prior proceeding), (2) actuality of litigation (that is, that the point was actually litigated in the earlier proceeding), (3) finality of the earlier resolution (that is, that the issue was determined by a valid and binding final judgment or order), and (4) the centrality of the adjudication (that is, that the determination of the issue on the prior proceeding was essential to the final judgment or order).

*A.J. Faigin v. Kelly*, 184 F.3d 67, 78 (1st Cir. 1999) (citations omitted). Here, as discussed above, there

is no sufficient identicality between the issues, there was no actual litigation because the

Bankruptcy Court lacked authority to conduct such an inquiry, Reyes-Colón objected to the

---

bankruptcy petition." Docket No. 99 at 8. The applicable caselaw suggests otherwise. *See In re Forever Green Ath. Fields, Inc.*, 804 F.3d 328, 330 (3rd Cir. 2015) (finding that creditors filed the involuntary petition in bad faith even though they complied with statutory requirements); *In re Nordbrock*, 772 F.2d 397, 400 (8th Cir. 1985) ("A creditor does not have a special need for bankruptcy relief if it can go to state court to collect a debt."); *In re Tichy*, 332 B.R. 364, 374 (Bankr. N.D. Iowa 2005) ("Bad faith has been found to exist when a creditor's actions amount to an improper use of the Bankruptcy Code as a substitute for customary collection procedures."); *In re Val W. Poterek & Sons*, 169 B.R. 896, 905 (Bankr. N.D. Ill. 1994) ("The filing of a petition may be sanctionable for bad faith under § 303(i)(2) when a petitioner disregards facts which have an impact on the validity of their petition. Similarly, a creditor acts in bad faith under § 303(i)(2) when it files an involuntary petition knowing it does not have the requisite number of creditors."); *In re Silverman*, 230 B.R. 46, 53 (Bankr. N.J. 1998) ("Filing an involuntary petition with the intent to gain a strategic advantage . . . constitutes an improper purpose."); *In re Dami*, 172 B.R. 6, 10 (Bankr. E.D. Pa. 1994) ("Where the purpose of the bankruptcy filing is to defeat state court litigation without a [bankruptcy] purpose, bad faith exists.").

Docket No. 108 at 13-14.

CIVIL NO. 20-1355 (JAG)                                                                11

hearing and did not present evidence or cross examine the expert witness, the Bankruptcy Court

did not make any determination as to Banco Popular's good or bad faith, and the bad faith

determination was not essential to the final judgment in that case.[8]

## II.  Waiver

BPPR previously argued that "Plaintiff waived his right to a jury because he did not request

a jury trial for his § 303(i) claims in his motions to dismiss the involuntary bankruptcy." Docket

No. 108 at 9. The Court rejected this argument as follows:

> [T]his argument fails because, as the First Circuit explained, the
> purpose of § 303(i) does not become ripe unless and until dismissal
> has occurred. Therefore, Reyes-Colon could not have a valid §
> 303(i)(2) claim until after the involuntary bankruptcy was
> dismissed. It would be absurd to require a litigant to make a jury
> demand before he has a valid claim to plead. Regardless, Banco
> Popular insists that Plaintiff's motions to dismiss "triggered Reyes-
> Colon's 14-day term to file and serve a jury trial demand" because
> the "two pleadings–served as motions to dismiss–were not only
> intended to be dispositive of the lawsuit but were 'directed to the
> issue' of costs, attorney's fees, and damages under section § 303(i).'
>
> Following the First Circuit's holding in this case, if a § 303(i) claim
> is not ripe before dismissal, then the appropriate time to raise such
> claim must be after dismissal. As such, Reyes Colon cannot waive
> his right to a jury trial for a § 303(i)(2) claim before the pleading can
> legally be made. Consequently, if this specific pleading cannot be
> made before dismissal, a motion to dismiss cannot be considered

---

[8] The evidence presented and the Bankruptcy Judge's observations may be used in support of factor 4 of the totality of the circumstance test as the affirmative defense of justification. *See In re Colón*, 558 B.R. at 568 ("The evidence before this court clearly shows that the reasons leading to the filing of the involuntary petition are the typical ones prompting creditors to take action. The Involuntary Debtor was transferring assets to related entities under his possession and control, and was engaged in a scheme to defraud his main creditor, Banco Popular de Puerto Rico."); *In re Turner*, 80 B.R. 618, 623 (Bankr. Mass. 1987) ("Rule 9011 appears to be all-encompassing in the indicia of bad faith which it sets forth, including a significant objective requirement bearing on the legal justification of a claim or defense: a reasonable inquiry into the facts and the law. It is therefore logical to adopt its standards in a § 303(i)(2) case in order to avoid conflicting standards."); *Graham Mortg. Co. v. Goff (In re Goff)*, 579 Fed. Appx. 240, 246 (5th Cir. 2014) (considering testimony in support of affirmative defense of justification).

CIVIL NO. 20-1355 (JAG)                                                                                     12

> "the last pleading directed to the issue [] served." Accordingly,
> Reyes-Colon did not waive his right to a jury trial because he did
> not have a triable claim prior to dismissal.

*Id.* at 10-11 (citations omitted).

BPPR now reargues waiver by claiming "Reyes-Colón waived his right to claim relief under section 303(i)(2)" because Reyes-Colón's initial pleadings "were then superseded by two motions to dismiss respectively filed eight and nine years later where Reyes-Colón failed to preserve any post-dismissal relief under section 303(i)." Docket No. 109 at 7-8. This argument not only ignores this Court's previous analysis, but also disregards the First Circuit's ruling in this case. It is nonsensical that BPPR continues to argue that "Reyes-Colón failed to preserve any post-dismissal relief under section 303(i)," *id.*, when the First Circuit already determined "that a bankruptcy court would retain jurisdiction over a § 303(i) claim because that section necessarily requires post-dismissal jurisdiction. For these reasons, a bankruptcy court need not provide a jurisdiction-retention statement referring to § 303(i) claims to later exercise subject-matter jurisdiction over the same post dismissal." *Reyes-Colón*, 110 F.4th at 65-66 (citations omitted). As such, BPPR's rehashed waiver argument is barred by First Circuit case law.

III.    Timeliness

BPPR again raises the timeliness argument, even though this argument was previously rejected by the First Circuit and this Court. The First Circuit already determined that the date of accrual is "from the day mandate issued on June 19, 2019"[9] and not September 2, 2016—the

---

[9] The First Circuit explained that the Bankruptcy rules did not specify how appeals affect the § 303(i) deadline and the Bankruptcy Rules do not provide a deadline for motions for costs. *Reyes-Colón*, 110 F.4th at 67. This led the Circuit to use the mandate date—June 19, 2019—as the accrual date to determine the timeliness of the § 303(i)(1) claim. *Id.* Consequently, this Court sees no reason to use another accrual date, especially since a judgment does not become final and unappealable until an appeal is adjudicated. *Cf.*

CIVIL NO. 20-1355 (JAG)                                                                                    13

Bankruptcy Court's original dismissal date. *See id.*; *see also Reyes-Colón*, 110 F.4th at 67. Considering

that BPPR argues Reyes-Colón "had at least one year . . . to seek relief," then the claim is timely

because it was filed within one year of the First Circuit mandate. As this Court previously

explained,

> The First Circuit rejected this argument, explaining that the applicable rules do not specify how appeals affect deadlines and used the date of the First Circuit's mandate affirming dismissal as the dismissal date. Therefore, the involuntary petition's dismissal date is June 19, 2019, when the First Circuit issued the mandate affirming the Bankruptcy Court's dismissal, not the Bankruptcy's original dismissal dated September 2, 2016.

Docket No. 108 at 11 (cleaned up). Furthermore,

> As the First Circuit explained, [t]imeliness . . . is dependent on how parties interact; a short delay in some circumstances may be far more prejudicial than a longer one in others. Considering the issues presented in this case originated from an involuntary petition filed in 2006, which in turn stemmed from another state court case that initiated in 2005, and the involuntary petition was ultimately dismissed in 2019, the Court finds Plaintiff's § 303(i)(2) claim are timely because (1) the statute does not specify a deadline for the filing of § 303(i)(2) claims, (2) Banco Popular did not raise any arguments as to the timeliness of these claims, (3) the § 303(i)(2) claim was filed within one year after the First Circuit's mandate affirming dismissal, (4) Puerto Rico's general tort statute has a prescriptive period of one year, and (5) the Parties have been in litigation for approximately twenty years.

---

*Hickey v. Wellesley Pub. Sch.*, 1995 U.S. App. LEXIS 1392, *1-2 (1st Cir. 1995) ("The effect of the mandate is to bring the proceedings in a case on appeal in our Court to a close and to remove it from the jurisdiction of this Court, returning it to the forum whence it came."); *Ostrer v. United States*, 584 F.2d 594, 598 (2d Cir. 1978); *accord United States v. Rush*, 738 F.2d 497, 509 (1st Cir. 1984) ("[I]t is the date on which the mandate is issued which determines when the district court reacquires jurisdiction for further proceedings") (citation omitted), *cert. denied*, 470 U.S. 1004 (1985); *United States v. Rush*, 738 F.2d 497, 509 (1st Cir. 1984) ("Courts which have considered the question of when an appeal ends and the clock begins to run again for speedy trial purposes have generally held that the applicable date is the date on which the appellate court issues its mandate.") (citations omitted); *Reddy v. Foster*, 845 F.3d 493, 500 (1st Cir. 2017) ("The Supreme Court has reinforced that ripeness doctrine seeks to prevent the adjudication of claims relating to contingent future events that may not occur as anticipated, or indeed may not occur at all.") (cleaned up).

CIVIL NO. 20-1355 (JAG)                                                                     14

*Id.* at 12.

Consequently, BPPR's rehashed timeliness argument continues to be unpersuasive.

## CONCLUSION

For the aforementioned reasons, BPPR's Motion to Dismiss is **DENIED**. **Answer to Complaint due by July 7, 2026**. The Court will not entertain any other motion to dismiss on the merits. The case will be assigned to a U.S. Magistrate Judge for pretrial management.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this Tuesday, June 16, 2026.

s/ Jay A. Garcia-Gregory
JAY A. GARCIA-GREGORY
United States District Judge